Juan **HERNANDEZ,** and Maria Hernandez, Individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

Matthew J. **DANAHER,** Clerk of the Circuit Court of Cook County, Individually and in his official capacity and on behalf of all other persons similarly situated, et al., Defendants.

No. 74 C 3473.

United States District Court, N. D. Illinois, E. D.

Dec. 19, 1975.

758

Fred Lieb, Alan Dockterman, of Legal Assistance Foundation of Chicago, James Latturner, Catherine Reichelderfer, of Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiffs.

Bernard Carey, State's Atty. for Cook County, William J. Scott, Atty. Gen. of Ill., and George L. Grumley, Sp. Asst. Atty. Gen., Chicago, Ill., for defendants.

Before PELL, Circuit Judge, and FLAUM and KIRKLAND, District Judges.

KIRKLAND, District Judge.

This matter comes before the Court on motion of defendants to dismiss the complaint for failure to state a claim upon which relief could be granted. Plaintiffs have cross-filed for summary judgment on entitlement to declaratory and injunctive relief. Further, on instruction by the Court, the parties briefed the issue of whether, in light of *Huffman v. Pursue Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), this Court should enjoin a pending state attachment proceeding against plaintiffs prior to exhaustion of state judicial remedies.

The Illinois Department of Public Aid ("IDPA") filed suit in Circuit Court of

Cook County, Illinois, on October 30, 1974, alleging that plaintiffs had fraudulently concealed the existence of monies while applying for and receiving public aid assistance. Simultaneous with filing of this suit, IDPA filed an attachment complaint which resulted in attachment of plaintiffs' funds in a credit union on November 5, 1974. After answering the complaint and filing their appearance, plaintiffs filed the instant complaint in federal court challenging the constitutionality of the Illinois Attachment Act and seeking declaratory, injunctive and other relief.

Jurisdiction is alleged under 28 U.S.C. § 1343(3) and (4) and 42 U.S.C. § 1983. The complaint challenges the constitutionality of the Illinois Attachment Act, Ch. 11, §§ 1, 2, 2a, 6, 8, 10, and 14. The Act is alleged to be unconstitutional both on its face and as applied on grounds that it violates the due process clause of the Fourteenth Amendment to the United States Constitution.

Two issues are presented to this Court for decision: (1) does *Huffman v. Pursue Ltd., supra,* prevent this Court from intervening in a state civil proceeding filed pursuant to a state statute alleged to be unconstitutional; and (2) if the preceding question is answered in the negative, are the challenged portions of the Illinois Attachment Act unconstitutional?

## I. MUST FEDERAL ACTION BE RESTRAINED PENDING EXHAUSTION OF STATE REMEDIES?

The Supreme Court in *Huffman* extended for the first time the doctrine of non-interference with state criminal proceedings, articulated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), to a civil proceeding. The remedy presently sought by plaintiffs would require this Court to enjoin a state court civil proceeding; hence we are constrained at the outset to examine the applicability of *Huffman* prior to any consideration of the merits of this case.

The only obstacle to reaching the merits of this case would be a determination that the principles articulated in *Huffman* apply here.

It is clear that this Court is empowered to enjoin state action under certain circumstances, notwithstanding the general prohibition against such injunctions found in 28 U.S.C. § 2283. *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), held that the anti-injunction rule of Section 2283 does not apply to civil rights actions under 42 U.S.C. § 1983. Likewise, if the Illinois attachment proceeding were determined not to be "proceedings in a state court", the anti-injunction statute by its own terms would not apply. This Court holds the challenged attachment proceeding to be a pending proceeding within the meaning of Section 2283.

The *Huffman* case arose out of an attempt by the State of Ohio to close a theatre which showed allegedly obscene films, on grounds that the theatre was creating a public nuisance. The state proceeded under the Ohio nuisance statute, which defined a place exhibiting obscene films as a nuisance. The Ohio Court determined in an adversary proceeding that the films were obscene and immediately ordered that the theatre be closed. Following this decision, and without exhausting state appellate procedure, the theatre operator filed suit in federal court. A three-judge district court held that closing of the theatre by the Ohio State Court was violative of the plaintiff operator's constitutional rights because the films had not been declared obscene prior to their exhibition. The plaintiff operator had not exhibited any films after the determination that said films were obscene.

The Supreme Court vacated the order of the three-judge court on grounds of equity, comity, and federalism, holding that the principles of *Younger v. Harris, supra,* were applicable even though the state proceeding was civil in nature.

The *Younger* decision gave approval to long-standing policy that federal courts should not interfere with state criminal proceedings except in extraordinary circumstances. See *Fenner v. Boykin,* 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927

(1926); *Spielman Motor Sales Co. v. Dodge*, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322 (1935); *Stefanelli v. Minard*, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951). *Younger* specifically held that federal injunctive relief should not be employed against state criminal prosecutions except: (1) upon a showing of "irreparable injury" that is both "great and immediate"; or (2) where the statute in question is "flagrantly and patently violative of express constitutional prohibitions". 401 U.S. at 53, 91 S.Ct. at 755.

The decision in *Huffman* is significant in that it represents the first extension of these principles to non-criminal proceedings. In extending this doctrine, the Court stated that action of the State of Ohio was more akin to criminal proceedings than most civil cases. 95 S.Ct. 1208. This Court is of the opinion, however, that *Huffman v. Pursue Ltd.* is not applicable here for two reasons.

■ First, the rule of *Younger* was established for, and has been limited in application to, criminal proceedings. The Court's principal justification for extension of the *Younger* doctrine in *Huffman* was that Ohio's civil proceeding was "in aid of and closely related to criminal statutes". 95 S.Ct. 1208. In *Huffman*, the State of Ohio proceeded under a statute which gave an exclusive right of action to the state. By contrast, the Illinois Attachment Act provides a cause of action for any person, public or private. It is mere happenstance that the State of Illinois was the petitioner in this attachment proceeding. It is likewise coincidental that the pending state proceedings may arguably be quasi-criminal in nature; under the Illinois Attachment Act, they need not be. These major distinctions preclude this Court from extending the principles of *Younger*, based on considerations of equity, comity and federalism, beyond the quasi-criminal situation set forth in *Huffman*.

■ Second, an express exception to the *Younger* rule of non-interference in state criminal proceedings exists where the challenged statute is patently and flagrantly violative of the constitution. This Court is of the opinion that the present case falls within that exception, for reasons hereinafter set forth.

## II. IS THE ILLINOIS ATTACHMENT ACT UNCONSTITUTIONAL?

Four recent Supreme Court cases are controlling authority in an analysis of constitutional validity of summary creditor remedies. These cases include *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 849, 21 L.Ed.2d 771 (1969); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); and *North Georgia Finishing Inc. v. Di-Chem Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 753 (1975).

In *Sniadach v. Family Finance Corp., supra*, the Court held that a Wisconsin pre-judgment garnishment procedure which resulted in garnishment of wages without notice and prior hearing, violated fundamental principles of due process.

In *Fuentes v. Shevin, supra*, the Supreme Court examined the replevin acts of Florida and Pennsylvania. Both acts authorized the issuance of pre-judgment writs of replevin through a summary process of *ex parte* application to the court clerk, accompanied by the posting of bond for an amount in excess of the property's value. Neither act provided for notice and prior hearing or an immediate post-seizure hearing. Both acts did permit the respondent to recover his replevied property upon posting of a bond in double the amount of its value. The Court held that procedural due process required that a person in possession of chattels be given an opportunity for a hearing prior to issuance of a writ of replevin. The Court further held that posting of a bond was a minimal deterrent to abusive or even good faith use of the replevin procedure and constituted no substitute for a pre-seizure hearing.

In *Mitchell v. W. T. Grant Co., supra*, the Supreme Court carved out an exception to the pre-seizure hearing rule pro-

mulgated in *Sniadach* and *Fuentes.* There the Court upheld the validity of a Louisiana sequestration act which authorized sequestration of encumbered property upon *ex parte* application of a creditor without notice to the debtor or opportunity for prior hearing. The Court found, however, that the Louisiana act did provide safeguards not present in those statutes analyzed in *Sniadach* and *Fuentes.*

First, the Louisiana act required the creditor to file an affidavit before a judge, setting forth factual rather than conclusory allegations which entitled the creditor to relief. A writ would only issue by the judge upon the proper showing. Second, and of equal importance, the act expressly entitled the debtor to an immediate post-seizure hearing; a hearing in which the burden was upon the creditor to prove the allegations contained in the affidavit. The Court found that these provisions sufficiently safeguarded the rights of the debtor to eliminate necessity for prior notice and hearing.

A Georgia garnishment act was examined by the Court in *North Georgia Finishing Inc. v. Di-Chem, supra.* The Court determined that Georgia's summary procedure for garnishment satisfied neither the *Sniadach* and *Fuentes* requirement of pre-seizure hearing, nor the alternative judicial safeguards approved in *Mitchell.*

Having briefly summarized the applicable law, the Court now turns to the Illinois statute under constitutional challenge.

The Illinois Attachment Act (Illinois Revised Statutes, Ch. 11, 1973) authorizes a creditor with a money claim, whether liquidated or unliquidated and whether sounding in contract or tort, to attach the assets of an alleged debtor pending outcome of a lawsuit against the debtor on the money claim. The creditor can obtain a writ of attachment prior to filing his complaint against the debtor[1] and prior to the debtor having received notice of impending attachment or an opportunity to be heard on the question of whether the writ should issue.

Section 1 of the Act provides for attachment in any of nine circumstances. Plaintiffs specifically attack four subsections which authorize attachment upon the creditor's allegations of debtor fraud:

SIXTH: Where the debtor has within 2 years preceding the filing of the affidavit required, fraudulently conveyed or assigned his effects, or a part thereof, so as to hinder or delay his creditors.

SEVENTH: Where the debtor has, within [two] 2 years prior to the filing of such affidavit, fraudulently concealed or disposed of his property so as to hinder or delay his creditors.[2]

EIGHTH: Where the debtor is about fraudulently to conceal, assign, or otherwise dispose of his property or effects, so as to hinder or delay his creditors.

NINTH: Where the debt sued for was fraudulently contracted on the part of the debtor . . . . Ill.Rev.Stat., Ch. 11, § 1, sixth through ninth.

A creditor will be entitled to a writ of attachment, against an alleged debtor's property, upon the filing of an affidavit by the creditor, or his agent or attorney, which sets forth in verbatim statutory language one of the above allegations, along with the nature and amount of the claim and the name and place of residence of the debtor. Upon filing of this affidavit and the required bond with the clerk of the circuit court, the clerk issues a writ of attachment directing the sheriff to serve it upon the debtor, or another person holding the debtor's property.

If the action sounds in tort, under Section 2 of the Act the creditor must apply

---

**1.** Pursuant to § 25 of the Act, the complaint must be filed at least ten days before the return date of the writ of attachment.

**2.** This is the sole allegation of fraud set forth in the affidavit of Defendant O'Malley upon which the writ of attachment was issued.

to a judge of the circuit court. The judge, after questioning the creditor concerning the cause of action, endorses upon the affidavit the amount of damages for which the writ shall issue. Upon service of the writ, the sheriff takes and retains custody of the property attached or directs a third party in possession to withhold the attached property from the debtor.

The debtor may obtain release of his property prior to trial on the merits of the creditor's claim in two ways. First, the debtor can file a bond in double the value of the property attached, upon the condition that said property will be available for execution should judgment be rendered against him. Alternatively, he can file a bond in a sum sufficient to cover the amount of debt or damages alleged plus costs of suit.

Second, Section 27 of the Act provides that defendant debtor may answer by affidavit, denying the allegations set forth in the creditor's attachment affidavit; and if the court finds for defendant after trial on the merits of the attachment, the writ will be quashed. This section, however, does not give defendant an absolute right to a hearing on the attachment issue immediately after seizure.

The debtor whose property has been attached is thereby deprived of the use of his property from the date the writ is served until an uncertain future time when he receives a hearing on the attachment issue. Even if the debtor should seek a separate hearing thereon on the return date, the debtor can be deprived of his property for a period of sixty days, since Section 6 of the Act provides that the creditor shall set the return date from ten to sixty days after date of the writ.

It is clear on its face that the Illinois Attachment Act does not meet the due process standards established by the Supreme Court in the cases previously discussed.

The Illinois Act does not provide for pre-seizure hearing as required by *Fuentes.* Because of *Mitchell v. W. T. Grant Co., supra,* however, this Court does not hold that pre-seizure hearing is any longer an absolute requirement. However, neither does the Act provide the alternative safeguards approved by *Mitchell.* Specifically, the Illinois Act does not require the attachment creditor to set out facts in his affidavit which would entitle him to relief. The Act does not require the complainant to present such affidavit to a judge for determination of whether a writ should issue. Instead, the Act provides that upon conclusory allegations in verbatim statutory language, coupled with certain procedural information, a writ will automatically issue from the clerk of the court.

The provision for judicial review in tort cases is limited only to the question of potential damages and determination of limit on the amount of property to be attached. The judge is not required to evaluate the legal sufficiency of sworn facts as was the case in *Mitchell.*

Neither does the Act provide for an *immediate* post-seizure hearing upon application of the debtor, a hearing in which the attachment creditor bears the burden of proving his entitlement to relief at risk of dissolution of the writ. The Illinois Act merely provides for a post-seizure hearing on application by the debtor at a time to be set at the convenience of the Court. The Court, therefore, is under no duty to set an immediate hearing.

For these reasons, this Court holds that the Illinois Attachment Act is on its face patently violative of the due process clause of the Fourteenth Amendment to the United States Constitution.

Plaintiffs are entitled to injunctive relief against defendants. Separate order to issue in accordance with this opinion.