No. 48,181

MILDRED R. HILLHOUSE, *Appellee,* v. CITY OF KANSAS CITY, MISSOURI, *Appellant.*

(559 P. 2d 1148)

Opinion filed January 22, 1977.

*James M. Warden,* of Kansas City, Missouri, argued the cause. *John J. Bukaty,* of Kansas City, Kansas, *James H. Horn,* and *Stephen M. Blackwell,* of Kansas City, Missouri, appeared on the brief for the appellant.

*Donald W. Vasos,* of Scott, Daily, and Vasos, of Kansas City, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by the plaintiff-appellee, Mildred R. Hillhouse, against the city of Kansas City, Missouri, Farmers Insurance Company, Inc., and Frederick Bailey, to recover damages for personal injuries arising out of a motor vehicle collision which occurred in Kansas City, Missouri. The defendants Farmers Insurance Company and Frederick Bailey are not involved in this appeal. In order to obtain quasi-in-rem jurisdiction over the city the plaintiff on filing her petition attached a judgment previously entered against the city of Kansas City, Kansas, in favor of the city of Kansas City, Missouri, which judgment had been obtained in the United States District Court in Missouri. Since plaintiff's cause

of action arose in the state of Missouri, plaintiff could not obtain personal jurisdiction over the city of Kansas City, Missouri, by using the long-arm statute (K. S. A. 60-308). Following attachment of the judgment the city of Kansas City, Missouri, filed a motion to quash service, dismiss the petition, and dissolve the order of attachment. The district court of Wyandotte county denied these motions and held that it had quasi-in-rem jurisdiction over the city of Kansas City, Missouri, by reason of the attachment. This court permitted an interlocutory appeal from that decision.

The factual circumstances concerning the collision which gave rise to plaintiff's cause of action for damages are not a matter of present concern. Suffice it to say, plaintiff alleged that her motor vehicle was struck from the rear by a truck owned by the city and driven by Frederick Bailey, allegedly an employee of the city. The plaintiff recognized that personal jurisdiction could not be obtained over the city of Kansas City, Missouri. She filed an affidavit signed by her attorney for attachment pursuant to K. S. A. 60-701, *et seq.* This affidavit followed the usual form as required by the attachment statutes and alleged in substance that the plaintiff has a just claim against the city of Kansas City, Missouri; that the amount that affiant believes that plaintiff should recover is $82,541.79; that affiant has good reason to believe defendant is a nonresident and a foreign municipal corporation; that the defendant is about to move its property or effects out of the state; and that such property or effects consist of indebtedness and credits due defendant from the city of Kansas City, Kansas, arising out of a final judgment of $150,000 rendered in the United States District Court in Missouri. As noted above this attachment was used as the basis for obtaining quasi-in-rem jurisdiction over the defendant, city of Kansas City, Missouri. In this opinion we will refer to the defendant-appellant as the city.

The city's first point on the appeal is that the city of Kansas City, Missouri, as a foreign municipal corporation, is not subject to suit in the district court of Wyandotte county for the reason that as a matter of public policy a foreign municipal corporation can only be sued in the county of the state where it is located. In support of its position the defendant city relies on *Marshall v. Kansas City, Mo.*, 95 Kan. 548, 148 Pac. 637. *Marshall* involved a factual situation quite similar to that involved in the present case. The plaintiff's cause of action against the city of Kansas City, Missouri, arose in the state of Missouri. The issue in *Marshall* was whether a cause

of action could be brought in Kansas against a Missouri municipal corporation on a cause of action arising in Missouri. The majority of the court held that a city of another state which is operating a water plant in this state is not subject to be sued in the courts of Kansas for a personal injury sustained in Missouri although caused by its negligence. In holding that the Kansas courts lacked jurisdiction the majority opinion reasoned as follows:

"While the statute does not in express terms provide for suing cities of another state which may be found engaged in private business in Kansas it is the view of the court that an action against a municipality is inherently local and can only be brought in the jurisdiction in which the city is located. At common law no action could be brought against a municipal corporation outside of the county where it was situate unless an express statute authorized it to be sued elsewhere. . . . This rule is based mainly on the theory that administrative officers of a municipality are necessarily engaged at home in the performance of their public duties and that it is contrary to public welfare and the scheme of municipal government to require them to go away from home and from their daily duties to resist litigation that may be instituted against the municipality in other places. The court is of opinion that in enacting the provisions of the code as to venue and service of process upon persons and corporations, resident and nonresident, the legislature did not have the cities of other states in mind but framed the provisions upon the theory of common law that cities are but subdivisions of a state exercising sovereign powers and are not amenable to courts outside of the state in which such cities are situate. While the cause of action is transitory in nature the forum is necessarily local, and in the absence of express legislative provision it must be assumed that the legislature did not contemplate that a foreign municipal corporation could be sued in Kansas." (pp. 549, 550.)

The effect of the majority opinion was to grant to foreign municipal corporations a special privilege not to be sued in the Kansas courts, which privilege is not afforded other nonresident corporations.

Chief Justice Johnston in a dissenting opinion joined in by Mr. Justice Burch rejected the holding of the majority. The rationale of the dissenting opinion was that the municipality of Kansas City, Missouri, is essentially a private corporation, and should be subject to suit in the courts of Kansas as are other nonresidents and foreign corporations. The dissent relied upon *State v. Holcomb*, 85 Kan. 178, 116 Pac. 251, where it was said:

"'. . . When a state, or any of its municipalities, comes within the boundaries of another state it does not carry with it any of the attributes of sovereignty, and is subject to the laws of such other state the same as any other proprietor.'" (p. 185.)

The dissenting opinion found no logical reason to create a special

privilege in favor of foreign municipal corporations. It should be noted that *Marshall* was decided in 1915.

The same issue arose again in *Baker v. Kansas City, Mo.*, 118 Kan. 27, 233 Pac. 1012. In *Baker* the plaintiff's cause of action arose in the state of Kansas at the city's water pumping station which was located in Wyandotte county, Kansas. The supreme court declined to follow *Marshall* and held that when a foreign municipal corporation comes into this state and establishes, maintains, and operates a water system here, it does not bring its sovereignty into this state, but is conducting its business here in its proprietary capacity, and for liabilities arising in this state from the conduct of such business here, it may be sued in the courts of this state. The court in *Baker* obviously rejected the rationale of the majority opinion in *Marshall* that a foreign municipal corporation has a special privilege to be sued only in the county where it is located.

*Marshall* and *Baker* are the only Kansas cases in point. Counsel for the city has directed our attention to *Trader v. Southwestern Bell Telephone Co.*, 145 Kan. 690, 66 P. 2d 414, where we held that the venue of an action against a Kansas municipal corporation for damages for wrongful death is in the county where the municipal corporation is situated. *Trader* did not involve a foreign municipal corporation and hence cannot properly be considered in determining the issue now faced by this court.

The rule of *Marshall* was judicially created, and may be judicially abolished. (*Carroll v. Kittle*, 203 Kan. 841, 457 P. 2d 21; *Noel v. Menninger Foundation*, 175 Kan. 751, 267 P. 2d 934.) We have concluded that the rule which establishes a special privilege in favor of foreign municipal corporations so as to exempt them from suit in the courts of Kansas is not in harmony with modern conditions nor does it meet the demands of justice in our present society. We recently stated in *Steele v. Latimer*, 214 Kan. 329, 521 P. 2d 304, as follows:

" 'The nature of the common law requires that each time a rule of law is applied, it be carefully scrutinized to make sure that the conditions and needs of the times have not so changed as to make further application of it the instrument of injustice. Whenever an old rule is found unsuited to present conditions or unsound, it should be set aside and a rule declared which is in harmony with those conditions and meets the demands of justice.' " (pp. 332-333.)

Counsel for the plaintiff points out that 60 years ago *Marshall* may have reflected the prevailing social policy at a time when cities were principally engaged in providing relatively rudimentary services such as street, fire, and police protection. He contends, how-

ever, that the conditions of modern society have changed significantly since *Marshall* was decided. We agree. It is obvious that there has been an enormous expansion of services provided by cities in recent years. Modern-day cities operate zoos, museums, medical centers, parks, municipal golf courses, transit enterprises, airport facilities, and a multitude of other proprietary endeavors. Cities are no longer the parochial and insular institutions which existed when *Marshall* was decided. Today there is no sound reason why a foreign municipal corporation should be treated any differently than foreign private corporations. Insofar as the venue of civil actions is concerned, the legal basis which supports the jurisdiction of Kansas courts over foreign private corporations should be sufficient to justify jurisdiction over foreign municipal corporations. We hold that *Marshall* is overruled and that foreign municipal corporations henceforth are subject to be sued in the courts of this state to the same extent as foreign private corporations. We are in full agreement with the district court in reaching this same conclusion.

As its second point on this appeal the city challenges the constitutionality of the Kansas statutory attachment procedure. The constitutional issue presented is narrow but troublesome. It is the position of the city that the Kansas statutory attachment procedure is in violation of the due process clause of the Fourteenth Amendment to the United States Constitution because it permits an attachment of a foregin corporation's property in this state without the posting of a bond by the plaintiff, solely upon a conclusory affidavit of the plaintiff or his attorney, and has the effect of taking a defendant's property prior to affording the debtor an opportunity to be heard before the attachment occurs. The issue is obviously difficult because of the flexible nature of procedural due process.

The Kansas statutory attachment procedure has been essentially the same since the beginning of statehood. The original statutory provisions may be found in G. S. 1868, Ch. 80, Sec. 190 through 236. Down through the years the attachment statutes have been amended from time to time, most recently in 1975. (Laws 1975, Ch. 52.) During the past century our statutory procedure has withstood constitutional attack and has become an established part of our code of civil procedure. In recent years the United States Supreme Court has reexamined some of the basic concepts of due process of law and has struck down as unconstitutional the statutory procedures of various states which permit the deprivation of a defendant's property by state court action without providing

notice and an opportunity to be heard at a time when the deprivation can still be prevented.

Resolution of the constitutional question presented requires a careful consideration of four recent United States Supreme Court decisions: *Sniadach v. Family Finance Corp.*, 395 U. S. 337, 23 L. Ed. 2d 349, 89 S. Ct. 1820 (1969); *Fuentes v. Shevin*, 407 U. S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1972); *Mitchell v. W. T. Grant Co.*, 416 U. S. 600, 40 L. Ed. 2d 406, 94 S. Ct. 1895 (1974); and *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U. S. 601, 42 L. Ed. 2d 751, 95 S. Ct. 719 (1975).

In *Sniadach* the Supreme Court held that a Wisconsin prejudgment garnishment procedure which resulted in garnishment of a debtor's wages without notice and prior hearing, violated fundamental principles of due process. In response to *Sniadach* the 1970 legislature amended the Kansas statutory attachment procedure to exclude from its operation attachments before judgment where the property of the defendant to be attached is in the possession of a third party and is in the form of earnings due and owing to the defendant. (K. S. A. 1975 Supp. 60-703; Laws of 1970, Ch. 238.)

In *Fuentes* the Supreme Court had before it for consideration the validity of Florida and Pennsylvania prejudgment replevin statutes. The statutes provided for summary seizure, based upon an *ex parte* order, of chattels and goods by state agents. The party requesting the seizure was required to post a bond in an amount double the value of the property to be seized. There was no provision for a hearing prior to seizure on behalf of the secured creditor. However, the debtor could reclaim the property after seizure by posting a counterbond within three days of the seizure. The court in a four to three decision found the statutes to be violative of due process standards. The majority opinion suggests that preseizure notice and opportunity for a hearing are required in all cases in which there has not been a contractual waiver of those rights unless some strong governmental interest in an immediate seizure without notice is involved such as where seizure is necessary to acquire quasi-in-rem jurisdiction or where plaintiff demonstrates a specific danger that the property is about to be concealed or destroyed so as not to be available to satisfy any judgment ultimately rendered. In the majority opinion the court stated that for more than a century the central meaning of procedural due process has been clear:

" '. . . Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.' " (p. 80.)

The court further pointed out that it is equally fundamental that the right to notice and an opportunity to be heard "must be granted at a meaningful time and in a meaningful manner." The holding of *Fuentes* seemed to be that, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event, there must be an opportunity for a hearing for the debtor before there can be a preseizure of his goods.

*Fuentes* was followed by *Mitchell* which retreated from *Fuentes* in a five to four decision. *Mitchell* involved a Louisiana sequestration statute where consumer goods could be seized by a creditor without prior notice or hearing. The Louisiana statute in question was upheld by the majority opinion. The court relied heavily upon the premise that a secured creditor with a lien in the property also has due process rights in the property seized. The court found that the debtor's due process rights were protected by certain safeguards provided in the Louisiana act which (1) required the creditor to allege in his affidavit specific facts rather than conclusory allegations showing his entitlement to prehearing sequestration; (2) required that a *judicial officer* pass on the sufficiency of the facts alleged in plaintiff's affidavit before issuing the sequestration order, rather than allowing the order to be issued ministerially by the clerk of the court; and (3) provided the defendant a right to an immediate postseizure hearing on the validity of the sequestration.

The most recent case in this line of decisions is *North Georgia* which held the Georgia prejudgment garnishment statute to be unconstitutional. Unlike the previous cases, *North Georgia* did not involve a consumer transaction. It dealt with the garnishment of a corporate bank account by another corporation. The Georgia statute provided for the issuance of a writ of garnishment upon an affidavit containing only conclusory allegations and without participation by a judicial officer. Furthermore there was no provision for an immediate postgarnishment hearing. The Georgia statute was held violative of the defendant's due process rights notwithstanding the fact that the plaintiff was required to post a double bond. The court was concerned that a bank account had been impounded and put totally beyond use during the pendency of the litigation, all without benefit of notice, hearing, or participation by a judicial officer. The court specifically declined to distinguish corporate or commercial property from consumer property in terms of due process rights.

Since *Mitchell* the lower federal courts, faced with the constitutional issue, have relied generally on the *Mitchell* safeguards for determining the validity of state statutory attachment procedures. In *Guzman v. Western State Bank of Devils Lake, No. Dak.*, (8th Cir. 1975) 516 F. 2d 125, the court found the North Dakota attachment statute unconstitutional for failure to meet *Mitchell* requirements due to the allowance of conclusory affidavits, lack of judicial supervision, and the requirement that the debtor post a bond when challenging the attachment. The court termed the posting of a bond an extreme hardship on the debtor. The Illinois statute was found to lack the *Mitchell* safeguards and declared unconstitutional in *Hernandez v. Danaher*, (N. D. Ill. 1975) 405 F. Supp. 757. A similar result was reached in *Terranova v. Avco Financial Services of Barre, Inc.*, (D. C. Vt. 1975) 396 F. Supp. 1402, which held unconstitutional the Vermont attachment procedures. The prejudgment statutes of two other states have withstood constitutional attack. The court in each case applied the *Mitchell* standards and found them satisfied. (*Matter of Northwest Homes of Chehalis, Inc.*, [9th Cir. 1975] 526 F. 2d 505 [Washington attachment statute]; *Hutchison v. Bank of North Carolina*, [M. D. N. C. 1975] 392 F. Supp. 888 [North Carolina attachment statute].)

A thorough analysis of these cases leads one to the conclusion that in order for a state prejudgment attachment procedure to be constitutional under the due process clause, the statute must contain the following necessary elements:

(1) The plaintiff must furnish an appropriate bond or other security to protect the debtor in the event the attachment has been wrongfully obtained.

(2) The affidavit upon which the attachment is based must allege specific facts rather than conclusory allegations in the statutory language.

(3) A judicial officer must pass on the sufficiency of the facts alleged in plaintiff's affidavit before issuing an attachment order.

(4) It is not sufficient for the attachment to be subject to dissolution on the posting of a bond by the defendant; the defendant debtor must be provided an immediate postseizure hearing on the validity of the attachment.

With these basic principles in mind we turn now to the pertinent

Kansas attachment statutes to determine their constitutional validity. The relevant statutes are as follows:

K. S. A. 1975 Supp.

"60-701. **Grounds for attachment.** Subject to the provisions of K. S. A. 1975 Supp. 60-703, and amendments thereto, the plaintiffs at or after the commencement of any civil action may have, as an incident to the relief sought, one or more attachments against the property of the defendant, or that of any one or more of several defendants, when the defendant whose property is to be attached:

"(1) is a nonresident of the state or a foreign corporation, or

"(2) has absconded or is concealed so that the summons cannot be served or is about to move out of this state with the intent of changing domicile, or

"(3) is about to remove his or her property or effects out of this state, or

"(4) is about to convert his or her property or a part thereof into money for the purpose of placing it beyond the reach of creditors, or

"(5) has concealed, removed, assigned, conveyed or otherwise disposed of his or her property or effects so as to hinder or delay creditors or is about to do so, or

"(6) fraudulently contracted the debt or fraudulently incurred the liability, or

"(7) is liable for damages for injuries arising out of the commission of some felony or misdemeanor, or the seduction of a person, or

"(8) has failed to pay the price or value of any article or thing delivered which by contract the defendant was bound to pay upon delivery."

K. S. A. 1975 Supp.

"60-703. **Attachments, how obtained; certain earnings exempt before judgment; affidavit and bond required, when; may be issued and served on Sunday or holiday.** The order of attachment shall be issued by the clerk of the district court upon the filing of a petition stating the claim and the filing of an affidavit, or an affidavit and bond, as in this article required, except that no order of attachment shall be issued before judgment on plaintiff's claim where the property of the defendant to be attached is in the possession of a third party and is in the form of earnings due and owing to the defendant. The filing of an affidavit setting out one or more grounds of attachment is required in every case, and a bond is required except (1) in actions instituted on behalf of the state of Kansas or a county of the state, or (2) where the defendant is a nonresident of the state of Kansas or is a foreign corporation not qualified to do business in the state of Kansas and is not a common carrier or public utility. The order of attachment may be issued and executed on Sunday or on a legal holiday if the affidavit states that the party seeking the attachment will lose the benefit thereof unless the writ be issued or served on such day."

"60-704. **Form of affidavit, by whom made.** The affidavit shall be made by the plaintiff, or some person for him, and shall state that the plaintiff has a just claim against the defendant, and the amount which the affiant believes the plaintiff ought to recover, after allowing all just credits and set-offs, and that he has good reason to believe, and does believe, in the existence of one

or more of the causes, specifying the same, which according to the provisions of section 60-701 would entitle the plaintiff to an attachment."

"60-707. *Attached property retained or repossessed by defendant.* (*a*) *Bond, conditions.* When property of the defendant found in his possession or in the hands of any other person shall be attached, the defendant, or such other person, may retain or regain the possession thereof at any time before final judgment or sale of such property under the order of the court, by giving a bond with one or more sufficient sureties in an amount which is either, at the option of the party giving such a bond, (1) double the amount of the plaintiff's claim, or (2) double the appraisal of the property. The conditions of the said bond shall be that the said property, or the value thereof, as the case may be, shall be available to apply on any judgment rendered in the action at such time as the court shall order. The sufficiency of the said bond shall be determined by the officer levying the attachment.

"(*b*) *Discharge.* If the defendant or other person on his behalf at any time before judgment causes an undertaking to be executed to the plaintiff, with one or more sureties approved by the judge, in double the amount of the plaintiff's claim as stated in his affidavit, or in such lesser amount as shall be determined by order of the judge, to the effect that the defendant shall perform the judgment of the court, the attachment in such action shall be discharged and restitution made of any property taken under it."

"60-712. **Dissolution of attachment.** (*a*) *Motion to dissolve, how made.* In all cases where property, effects or credits shall be attached, any interested person may file a motion to dissolve the attachment, verified by affidavit, putting in issue the sufficiency of the proceedings or the truth of the facts alleged in the affidavit on which the attachment was sued out. The burden of proof shall be on the party seeking the attachment.

"(*b*) *Amendments.* The judge may in the interest of justice, permit amendments to the petition or the affidavit, including the specification of additional grounds for attachment."

It is clear from a reading of these statutes that the Kansas attachment procedure does not meet the due process standards established by the Supreme Court in the cases discussed above. We hold the Kansas prejudgment attachment procedure unconstitutional as a denial of due process of law for the following reasons:

(1) Where the ground for attachment under K. S. A. 60-701 is that the defendant whose property is to be attached is a nonresident of the state or a foreign corporation, the plaintiff is not required to post a bond or other security for the protection of the debtor. We see no sound reason for distinguishing between resident debtors and nonresident debtors. Due process of law reasonably requires that the plaintiff provide some protective security to both classes. In *Head v. Daniels,* 38 Kan. 1, 15 Pac. 911, the defendant debtor challenged the constitutionality of the attachment procedures on the ground that the plaintiff creditor was not required to furnish

a bond where the defendant is a nonresident of the state. Without stating any reason this court held that the statute was constitutional. In view of the present state of the law as discussed above, we have concluded that *Head* should be overruled and we do so. In order for a prejudgment attachment statute to withstand constitutional attack on the ground of denial of due process, it must provide for the posting of a bond by the creditor plaintiff for the protection of the debtor in every instance. A statutory exclusion of this requirement in cases of nonresident debtors is not constitutionally permissible.

(2) The Kansas statutory attachment procedure is unconstitutional because it permits the plaintiff in his affidavit to state conclusory allegations in the statutory language without allegations of specific facts which might justify prehearing attachment. In *Reyburn v. Brackett and Bassett*, 2 Kan. 227, decided in 1863, this court held that the grounds for an attachment may be stated in the affidavit in the language of the statute without specifying more particularly the facts which might justify the attachment. In *Reyburn* we declared that the facts and circumstances upon which the alleged grounds of attachment are founded where stated should be considered as surplusage. Traditionally in this state the plaintiff in his affidavit simply alleges the statutory ground for attachment without elaboration and no specific facts are stated to justify the attachment. In this case the affidavit for attachment executed by the plaintiff's attorney and filed in the district court simply alleged the statutory ground without elaboration. Since our present attachment statutes do not require specific facts rather than conclusory allegations to be alleged as the ground of attachment in the plaintiff's affidavit, the requirements of due process of law are not satisfied and the statutory attachment procedure is invalid. Insofar as *Reyburn* is contrary to our present holding, that case is overruled.

(3) The Kansas attachment procedure is constitutionally invalid for the further reason that the order of attachment is issued ministerially by the clerk of the court without the requirement that a judicial officer pass on the sufficiency of the facts alleged in plaintiff's affidavit before the attachment order is issued. In issuing an order of attachment the clerk of the court performs a ministerial act, not a judicial act. In *Reyburn* the attachment statute in effect in 1863 was challenged as an improper delegation

of judicial power to a nonjudicial officer in violation of section 27 of the Organic Act. We held clearly and unequivocally that where an attachment is granted on an affidavit in which the statutory grounds are positively stated, it is a ministerial and not a judicial act and may properly be performed by the clerk of the court. Our present attachment procedure does not satisfy the *Mitchell* requirement that a judicial officer pass on the sufficiency of the facts alleged in plaintiff's affidavit before the order of attachment is issued.

(4) K. S. A. 60-712 as set forth above provides that in all cases where property is attached, any interested person may file a motion to dissolve the attachment putting in issue the sufficiency of the proceedings or the truth of the facts alleged in the affidavit on which the attachment was sued out. The burden of proof is placed on the party seeking the attachment. In our judgment this statute does not give the defendant debtor an absolute right to a hearing on the attachment issue *immediately* after seizure as is required by the cases discussed above. The statute does not require the district court to set the motion for dissolution of the attachment down for immediate hearing. The hearing of the motion may take its turn on the calendar and it may be weeks before the matter can be heard by the court. With similar provisions the Illinois attachment statute was held invalid. The Illinois act merely provided for a postseizure hearing on application by the debtor at a time to be set at the convenience of the court. Since the court was under no statutory duty to set an *immediate* postseizure hearing, the Illinois act was determined to be constitutionally insufficient. (*Hernandez v. Danaher,* supra.)

Here the basis of the district court's quasi-in-rem jurisdiction must be the existence of a valid attachment of the defendant's property. Since the attachment is invalid, the quasi-in-rem jurisdiction of the district court is legally insufficient and must fall. It follows that the trial court was in error in overruling the defendant city's motions to quash service, dismiss the petition, and dissolve the order of attachment.

The judgment of the district court is reversed and remanded with directions to sustain the defendant's motions and to dismiss the case for want of jurisdiction.

IT IS SO ORDERED.