619 P.2d 749

**Kenneth K. SEARLES and Emma E. Searles, husband and wife, Appellants,**

v.

**FIRST NATIONAL BANK OF ARIZONA, a national banking association, Appellee.**

**No. 1 CA–CIV 4175.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 4, 1980.

Rehearing Denied Oct. 21, 1980.

· Review Denied Nov. 18, 1980.

Arizona Center for Law in the Public Interest by Bruce Meyerson and Carole Carpenter, Phoenix, for appellants.

Streich, Lang, Weeks, Cardon & French by William S. Hawgood, II, Christopher D. Johnson, and Earl E. Weeks, Phoenix, for appellee.

## OPINION

OGG, Chief Judge.

In this appeal we must determine if A.R.S. § 12–2402(A)(2) [ex parte prejudgment seizures] is constitutional as drafted and as applied to the facts of this case.

In October of 1976, the First National Bank of Arizona filed a Complaint and Application for Issuance of Provisional Remedy in the Maricopa County Superior Court. The Bank sought recovery of the amounts due and owing under the terms of a security agreement executed by appellants and assigned to the Bank at the time appellants purchased a mobile home. The Bank also sought immediate possession of the mobile home under the terms of the Security Agreement and pursuant to the provisions of A.R.S. § 12–2402.

The trial judge issued an Order for Provisional Remedy Without Notice in the nature of replevin on October 8, 1976. According to the Searles affidavit, the Searles were served with the complaint, summons and other pleadings on October 26, 1976. The deputy sheriff who served the papers advised the Searles that they had no right to a hearing or notice. However, he indicated that while he was supposed to take immediate possession of the mobile home, he would give the Searles two days to vacate the premises. On October 28, 1976, the Searles were informed that the repossession would be delayed until 10:00 a. m. on November 1, 1976.

A hearing was held on October 29, 1976 to consider a request by the Searles for a temporary restraining order to prevent eviction and repossession. The trial judge denied the request on November 1, 1976, and the sheriff took possession of the mobile home on November 3, 1976. The Searles then filed an answer which denied liability and counterclaimed for damages suffered as a result of the repossession of the mobile home. On May 13, 1977, the Searles filed a motion for partial summary judgment on their first counterclaim. The Bank filed a cross motion for summary judgment on all issues, which was granted. Judgment against the Searles was entered on September 23, 1977. The Searles appealed the part of the judgment relating to their first counterclaim. The counterclaim challenged the constitutionality of Arizona's Provisional Remedies Statutes and sought damages under 42 U.S.C. § 1983 for deprivation of their due process rights. They characterize the question presented as follows:

Whether A.R.S. § 12–2402(A)(2), which permits ex parte prejudgment seizures of property upon a showing that the debtor has defaulted on an obligation secured by a purchase money security interest, violates the due process clauses of the Arizo-

na and United States Constitutions on the facts of this case and as a matter of law.

■ Appellee contends that the Searles lack standing to challenge A.R.S. § 12–2402(A)(2), since they were afforded notice and hearing prior to the seizure of the mobile home. However, the initial order issued was for a provisional remedy *without notice*, and in any event, we note that the hearing before the court on the issue of the constitutionality of the Arizona prejudgment replevin statute did not offer the Searles a "meaningful" opportunity to be heard on the issue of *their liability*. *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). We therefore conclude that the appellants do have standing to challenge A.R.S. § 12–2402(A)(2).

Appellants argue that A.R.S. § 12–2402(A)(2), as written, violates the due process clause of the 14th Amendment to the Constitution of the United States and Art. II, § 4 of the Arizona Constitution. Article II, § 4 of the Arizona Constitution provides:

> No person shall be deprived of life, liberty, or property without due process of law.

This section is the corollary to the first clause of the 14th Amendment of the United States Constitution. *Bennett v. Arizona State Board of Public Welfare*, 95 Ariz. 170, 388 P.2d 166 (1963).

■ Appellants rely upon *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). Appellants contend that *Mitchell* requires extraordinary circumstances as a precondition to a prejudgment seizure. Appellants further contend that the Bank has failed to establish the existence of such extraordinary circumstances. However, a review of the relevant United States Supreme Court opinions indicates that an extraordinary situation is not a prerequisite or prejudgment seizure of collateral in which a secured creditor has a purchase money security interest. The salient factors discussed in the Supreme Court opinions also indicate that the pertinent Arizona statutes are constitutional as drafted and as applied in the instant case.

The procedural due process standards governing pre–judgment remedies have been in flux since the decision in *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). *Sniadach* was followed by *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), *Mitchell v. W. T. Grant Co.*, and *North Georgia Finishing v. Di–Chem*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). While the four decisions are the controlling authority in any analysis of the constitutional validity of provisional remedies, commentators in various jurisdictions have noted that the cases appear unclear and contradictory.[1] Since "[t]he Supreme Court

1. *See* Clarkson, *Creditors' Prejudgment Remedies and Due Process of Law–Connecticut's Summary Procedure Summarily Upheld; Fermont Division, Dynamics Corp. of America v. Smith*, 12 Conn.L.Rev. 174, 175 n.5 (1975) which notes that the problems presented by the Supreme Court cases are discussed in numerous articles analyzing legislative changes in other states:

*See, e. g.*, Alabama, Comment, *Garnishment in Alabama*, 29 Ala.L.Rev. 649 (1978); Arkansas, Nickles, *Creditors' Provisional Remedies and Debtors' Due Process Rights: Attachment and Garnishment in Arkansas*, 31 Ark.L.Rev. 607 (1978); California, Comment, *Attachment in California: Another Round of Creditors' Rights and Debtor Protection*, 20 U.C.L.A.L. Rev. 1015 (1973); Connecticut, Levine, *Due Process of Law in Pre–Judgment Attachment and the Filing of Mechanics' Liens*, 50 Conn. B.J. 335 (1976); Georgia, Comment, *Can Georgia Bank on Its Garnishment Laws?* 28 Mercer

L.Rev. 341 (1976); Iowa, Comment, *Prejudgment Seizure and Due Process: A Proposal for an Iowa Provisional Remedies Statute*, 63 Iowa L.Rev. 151 (1977); Kansas, Comment, *Civil Procedure: Kansas Prejudgment Attachment and the Due Process Clause*, 17 Washburn L.J. 163 (1977); New York, Kheel, *New York's Amended Attachment Statute: A Prejudgment Remedy in Need of Further Revision*, 44 Brooklyn L.Rev. 199 (1978); Oklahoma, TeSelle & Love, *Attachment, Garnishment, Replevin, and Self–Help Repossession in Oklahoma*, 30 Okla. L.Rev. 253 (1977); Texas, Note, *Texas Rules of Civil Procedure 592, 598a, 599, 608: The Constitutionality of the Amended Attachment Rules in Light of Recent Supreme Court Decisions*, 19 S.Tex.L.J. 342 (1978); Virginia, Brabham, *Sniadach Through Di–Chem and Backwards: An Analysis of Virginia's Attachment and Detinue Statutes*, 12 U.Rich.L.Rev. 157 (1977).

opinions have produced not only varying results, but differing analytical approaches to due process problems", the resulting confusion is understandable. *Jonnet v. Dollar Savings Bank of City of New York*, 530 F.2d 1123, 1126 (3d Cir. 1976).

In *Sniadach*, the Supreme Court held that a Wisconsin prejudgment garnishment procedure which resulted in garnishment of a debtor's wages without notice and without a prior hearing violated due process. The Court characterized wages as "a specialized type of property presenting distinct problems in our economic system." 395 U.S. at 340, 89 S.Ct. at 1822, 23 L.Ed.2d at 353. *Sniadach* led to two divergent lines of cases—"one limiting *Sniadach's* predeprivation notice and hearing rule to wages or property of similar importance to the individual, the other invalidating prejudgment procedures generally." 530 F.2d at 1126; *see Fuentes v. Shevin*, 407 U.S. at 72 n.5, 92 S.Ct. at 1990 n.5, 32 L.Ed.2d at 565 n.5.

The Supreme Court subsequently approved the latter line of cases in *Fuentes*. The opinion considered the constitutionality of the Florida and Pennsylvania prejudgment replevin statutes. The Florida law authorized repossession of goods sold without judicial order, approval or participation. The court clerk could issue a writ upon the bare assertion by the party seeking the writ that he was entitled to it. The Pennsylvania statutes were considered to be equivalent to Florida's except that Florida's law provided an eventual opportunity for a hearing, while Pennsylvania's law did not require a hearing on the merits of the conflicting claims to possession of the replevined property. The Court in a four to three decision held that the statutes violated due process. While the majority opinion suggests that preseizure notice and hearing are required in most situations, the Court also indicated that "[t]here are 'extraordinary situations' that justify postponing notice and opportunity for a hearing.... These situations, however, must be truly unusual." 407 U.S. at 90, 92 S.Ct. at 1999, 32 L.Ed.2d at 575–76.

*Fuentes* was followed by the *Mitchell* decision, which in the words of Justice Powell's concurring opinion "withdraws significantly from the full reach of [the principle of preseizure hearings]" as enunciated in *Fuentes*. 416 U.S. at 623, 94 S.Ct. at 1908, 40 L.Ed.2d at 423. Numerous commentators also interpreted the decision as a "retreat" or "repossession" of *Fuentes* even though the *Mitchell* opinion stated that "we are convinced that *Fuentes* was decided against a factual and legal background sufficiently different from that now before us and that it does not require the invalidation of the Louisiana sequestration statute, either on its face or as applied in this case." 416 U.S. at 615, 94 S.Ct. at 1904, 40 L.Ed.2d at 418. *See* 31 Ark.L.Rev. 607, 616 n.36; 12 Conn.L.Rev. 174, 180 n.50.

In *Mitchell* the Court considered certain provisions of the Louisiana Code of Civil Procedure which allow sequestration of property without prior notice of an opportunity for a hearing. The issue, which was similar to that in *Sniadach* and *Fuentes*, concerned whether the sequestration violated due process. However, the *Mitchell* opinion noted that *Sniadach* characterized wages as a specialized type of property and "that garnishment was subject to abuse by creditors without valid claims" while the risks of such claims in *Mitchell* was "minimized by the nature of the security interest ... and the protections to the debtor offered by Louisiana procedure." 416 U.S. at 614, 94 S.Ct. at 1903, 40 L.Ed.2d at 417–418. The *Mitchell* opinion also emphasized that even though the taking of consumer goods might cause a "real impact" on the debtor, "his *basic source of income* [as in *Sniadach* ] is unimpaired". 416 U.S. at 610, 94 S.Ct. at 1901, 40 L.Ed.2d at 415 (emphasis added).

The *Mitchell* opinion placed considerable importance on the consideration that the Court was *not* confronted with a "case where the property sequestered by the court is exclusively the property of the defendant debtor." 416 U.S. at 604, 94 S.Ct. at 1898, 40 L.Ed.2d at 412. The Court

further indicated that a *secured* creditor also has due process rights in the property seized:

> The question is not whether a debtor's property may be seized by his creditors, *pendente lite*, where they hold no present interest in the property sought to be seized. The reality is that both seller and buyer had current, real interests in the property, and the definition of property rights is a matter of state law. Resolution of the due process question must take account not only of the interests of the buyer of the property but those of the seller as well.
>
> With this duality in mind, we are convinced that the Louisiana sequestration procedure is not invalid, either on its face or as applied.

416 U.S. at 604–05, 94 S.Ct. at 1898–99, 40 L.Ed.2d at 412.

The Court then noted that historically one of the "principal concerns" pending resolution of conflicting claims to property has been the possibility that "the property would deteriorate or be wasted in the hands of the possessor and that the latter might sell or otherwise dispose of the goods." 416 U.S. at 605, 94 S.Ct. at 1899, 40 L.Ed.2d at 412. Appellants attempt to distinguish *Mitchell* on the basis of the following excerpt which deals with the preceding concern:

> there is the real risk that the buyer, with possession and power over the goods, will conceal or transfer the merchandise to the damage of the seller. This is one of the considerations weighed in the balance by the Louisiana law in permitting initial sequestration of the property. *An important factor in this connection is that under Louisiana law, the vendor's lien expires if the buyer transfers possession.* It follows that if the vendor is to retain his lien, superior to the rights of other creditors of the buyer, it is imperative when default occurs that the property be sequestered in order to foreclose the possibility that the buyer will sell or otherwise convey the property to third parties against whom the vendor's lien will not

survive. The danger of destruction or alienation cannot be guarded against if notice and a hearing before seizure are supplied. The notice itself may furnish a warning to the debtor acting in bad faith.

416 U.S. at 608–09, 94 S.Ct. 1900–01, 40 L.Ed.2d at 414 (emphasis added).

Appellants contend that the discussion of the risk of concealment or transfer of the collateral and the expiration upon transfer of a lien under Louisiana law is an application in *Mitchell* of the extraordinary situation standard noted in *Fuentes*. *See Guzman v. Western State Bank of Devils Lake*, 516 F.2d 125 (8th Cir. 1975). However, we believe that the appellee is correct in arguing that such an interpretation of *Mitchell* or *Guzman* severely distorts the significance of the Louisiana Vendor's Lien Law. The risk of destruction or alienation of secured property is present in every situation of preseizure notice. Consequently, the expiration of a lien in Louisiana upon transfer of possession is not an "extraordinary" or "truly unusual" situation. On the contrary, the potential for expiration simply serves as an example under the facts of that case of the general risk of destruction or alienation of the security. *See* 416 U.S. at 629 n.1, 94 S.Ct. at 1911 n.1, 40 L.Ed.2d at 426 n.1 (Justice Stewart, Dissent).

It is also important to note that *Mitchell* is "considerably less dramatic" than other "extraordinary situation" cases. 12 Conn.L. Rev. 174, 186 n.84. *See* 407 U.S. at 90–92, 92 S.Ct. at 1999–2000, 32 L.Ed.2d at 575–77 (discussion of "extraordinary situation" cases). "The most important distinction between *Mitchell* and the 'extraordinary situations' cases, however, lies in the close scrutiny of the procedural safeguards in *Mitchell*. The extraordinary situation decisions lack *Mitchell's* solicitude for procedural protection, presumably because extensive protection is not appropriate in truly extraordinary situations." 12 Conn.L.Rev. 174, 186, n. 84. It is, therefore, reasonable to conclude that the Court did not believe it was dealing with an extraordinary situation in *Mitchell*.

The *Mitchell* decision was followed by *North Georgia Finishing v. Di–Chem*, in which the creditor, Di–Chem, had filed suit against North Georgia Finishing and had garnished the debtor's bank account without providing notice or a hearing. The Court found that Georgia's garnishment statute was unconstitutional and "vulnerable for the same reasons" as those used to invalidate the Pennsylvania and Florida statutes in *Fuentes*. 419 U.S. at 606, 95 S.Ct. at 722, 42 L.Ed.2d at 757. While the *North Georgia* opinion apparently revitalized *Fuentes*, it also indicated that the statute in question had "none of the saving characteristics of the Louisiana statute" considered in *Mitchell*. 419 U.S. at 607, 95 S.Ct. at 722, 42 L.Ed.2d at 757.

The bifurcated reasoning in *North Georgia* has resulted in various attempts at harmonizing the Supreme Court's opinions.[2] However, we conclude that in the instant case, the correct interpretation of *Mitchell* —and for that matter, an application of any of the previously noted theories attempting to harmonize *Sniadach, Fuentes, Mitchell* and *North Georgia* —requires a decision upholding the Arizona Statutes.

For instance, since we are concerned with a purchase money security interest in the instant case, even the least expansive interpretation of *Mitchell* —limiting it to situations involving security interests—indicates that *Mitchell's* reasoning should control in this case. Once it is determined that *Mitchell* is the controlling authority, it is necessary to consider the specific procedural safeguards emphasized in that opinion. The safeguards may be summarized as follows:

(1) The creditor must furnish "a sufficient bond to protect the vendee against all damages in the event the sequestration is shown to have been improvident."

(2) The creditor's claims of entitlement to possession "must be made to a judge,

and the writ will issue only upon his authorization."

(3) The writ "will not issue on the conclusory allegation of ownership or possessory rights."

(4) The debtor is entitled to immediately "seek dissolution of the writ, which must be ordered unless the creditor 'proves the grounds upon which the writ was issued', . . . the existence of the debt, lien, and delinquency, failing which the court may order return of the property and assess damages in favor of the debtor including attorney's fees."

(5) The debtor, with or without moving to dissolve the sequestration, may also regain possession by filing his own bond to protect the creditor against interim damage to him should he ultimately win his case and have judgment against the debtor for the unpaid balance of the purchase price which was the object of the suit and of the sequestration.

416 U.S. at 605-07, 94 S.Ct. at 1899–1900, 40 L.Ed.2d at 412–13.

■ A review of Arizona's statutes indicates that they incorporate all of the preceding safeguards. For instance, the bond requirement specified in *Mitchell* is met in A.R.S. § 12–1303, which requires delivery of "a bond payable to the defendant, in an amount not less than double the value of the property as stated in the affidavit." Judicial supervision is provided by A.R.S. § 12–2402(A), which requires that "[a]ny provisional remedy may be issued by a judge of any superior or justice court." The party seeking the remedy must also satisfy the third safeguard by "establish[ing] with particularity by affidavit to the court's satisfaction sufficient facts supporting the party's claim." A.R.S. § 12–2402(B). The fourth safeguard is incorpo-

**2.** *See, e. g.,* 17 Washburn L.J. 163, 168 (suggests limiting *Mitchell* to situations in which the creditor has an existing security interest in the property); 31 Ark.L.Rev. 607, 621–23 (suggests *North Georgia* expands *Mitchell's* appli-

cability to some unsecured transactions); 12 Conn.L.Rev. 174, 187–190 (suggests checklist of procedural safeguards or an ad hoc balancing test).

rated in A.R.S. § 12–2402(C), which allows the party against whom the provisional remedy will operate to "immediately move to quash such order." The hearing must be held in five days and the creditor must show the "probable validity" of his claim and the "existence of any statutory requirement for the issuance of any provisional remedy sought." The debtor has the opportunity to present any defense to the claim as well as claims of personal property exemptions. If the provisional remedy issued is quashed, A.R.S. § 12–2411 allows the court to "award reasonable attorney's fees to the party against whom the provisional remedy was issued or was sought to be issued." Finally, the fifth safeguard is provided by A.R.S. § 12–1304, which allows the debtor to regain possession by filing "a bond payable to the plaintiff in an amount not less than double the value of the property."

Other jurisdictions have also accepted the *Mitchell* safeguards as the appropriate criteria for determining the validity of statutes similar to Arizona's:

Since *Mitchell* the lower federal courts, faced with the constitutional issue, have relied generally on the *Mitchell* safeguards for determining the validity of state statutory attachment procedures. In *Guzman v. Western State Bank of Devils Lake, No. Dak.* (8th Cir. 1975) 516 F.2d 125, the court found the North Dakota attachment statute unconstitutional for failure to meet *Mitchell* requirements due to the allowance of conclusory affidavits, lack of judicial supervision, and the requirement that the debtor post a bond when challenging the attachment. The court termed the posting of a bond an extreme hardship on the debtor. The Illinois statute was found to lack the *Mitchell* safeguards and declared unconstitutional in *Hernandez v. Danaher* (N.D.Ill.1975) 405 F.Supp. 757. A similar result was reached in *Terranova v. Avco Financial Services of Barre, Inc.* (D.C.Vt. 1975) 396 F.Supp. 1402, which held unconstitutional the Vermont attachment procedures. The prejudgment attachment statutes of two other states have with-

stood constitutional attack. The court in each case applied the *Mitchell* standards and found them satisfied. (*Matter of Northwest Homes of Chehalis, Inc.* [9th Cir. 1975] 526 F.2d 505 [Washington attachment statute]; *Hutchison v. Bank of North Carolina* [M.D.N.C.1975] 392 F.Supp. 888 [North Carolina attachment statute].)

*Hillhouse v. City of Kansas City*, 221 Kan. 369, 559 P.2d 1148, 1153 (1977). *See also First National Bank v. Hasty*, 410 F.Supp. 482 (D.Mich.1976).

Appellants also contend that the nature of the property involved should be considered. However, following the reasoning in *Mitchell*, we conclude that while the taking of the mobile home might cause a "real impact" on the debtor, "his basic source of income is unimpaired." 416 U.S. at 610, 94 S.Ct. at 1901, 40 L.Ed.2d at 415. We further note that in *North Georgia* the Court stated:

We are no more inclined now than we have been in the past to distinguish among different kinds of property in applying the Due Process Clause.

419 U.S. at 608, 95 S.Ct. at 723, 42 L.Ed.2d at 758. *See Briere v. Agway, Inc.*, 425 F.Supp. 654 (D.Vt.1977). We therefore conclude that the nature of the property involved is not determinative in the instant case.

Since Arizona's statutory protections correspond with those noted in *Mitchell*, the court's concluding comments are applicable to this case:

To summarize, the Louisiana system seeks to minimize the risk of error of a wrongful interim possession by the creditor. The system protects the debtor's interest in every conceivable way, except allowing him to have the property to start with, and *this is done in pursuit of what we deem an acceptable arrangement pendente lite* to put the property in the possession of the party who furnishes protection against loss or damage to the other pending trial on the merits.

416 U.S. at 618, 94 S.Ct. at 1905, 40 L.Ed.2d at 420 (emphasis added). Similarly, Justice Powell's concurring remarks in *Mitchell* that "[t]he governmental function in the instant case is to provide a *reasonable* and *fair* framework of rules which facilitate commercial transactions on a credit basis" describes well the Arizona statutes. 416 U.S. at 624–25, 94 S.Ct. at 1908, 40 L.Ed.2d at 423–4 (emphasis added).

We therefore hold that A.R.S. § 12–2402(A)(2) [ex parte prejudgment seizures] does not violate the due process clauses of the United States and the Arizona Constitutions as drafted and as applied.

Affirmed.

JACOBSON, P. J., and CONTRERAS, J., concur.